IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) THE UNITED STATES OF AMERICA for the use and benefit of ELECTRICAL ALLIANCES, LLC, an Oklahoma limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>(2) CF2 CONSTRUCTION, a joint venture;<br>(3) CHEROKEE NATION ENVIRONMENTAL SOLUTIONS, LLC, a foreign limited liability company;<br>(4) CONTI FEDERAL SERVICES, INC., a foreign corporation;<br>(5) HARCO NATIONAL INSURANCE COMPANY, a foreign corporation;<br>(6) TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a foreign corporation; and<br>(7) UNLIMITED CONTRACTORS, LLC, an Arkansas limited liability company,<br><br>Defendants. | Case No. 26-CV-00148-SLP |

## **AMENDED COMPLAINT**

The United States of America, for the use and benefit of Electrical Alliances, LLC ("**EA**"), for its amended complaint against Defendants CF2 Construction, a joint venture ("**CF2**"), Cherokee Nation Environmental Solutions, LLC ("**CNES**"), Conti Federal Services, Inc. ("**Conti**"), Harco National Insurance Company ("**Harco**"), Travelers Casualty and Surety Company of America ("**Travelers**"), and Unlimited Contractors, LLC ("**Unlimited**"), states and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.      EA is an Oklahoma limited liability company with its principal place of business in Tulsa County, Oklahoma. EA's members are Zayne Smith, a citizen of Oklahoma, and The Second Amended and Restated Kathy Lynn Smith Trust. Said trust is a traditional trust formed under Oklahoma law and the trustee of the trust is a citizen of Oklahoma.

2.      Defendant CF2 is a joint venture between CNES, as managing venturer, and Conti, as partner venturer. CF2 does business in Oklahoma, including construction work on the below-described Project.

3.      Defendant CNES is a foreign limited liability company organized under the laws of the Cherokee Nation, a federally recognized tribe. CNES does business in Oklahoma, including construction work on the below-described Project through its joint venture with Conti. On information and belief, CNES is owned by and its sole member is Cherokee Nation Businesses, LLC, which is a foreign limited liability company organized under the laws of the Cherokee Nation. On information and belief, Cherokee Nation Businesses, LLC's sole member is the Cherokee Nation, a federally recognized tribe.

4.      Defendant Conti is a New Jersey corporation with its principal place of business in Orlando, Florida. Conti does business in Oklahoma, including construction work on the below-described Project through its joint venture with CNES.

5.      Defendant Harco is an Illinois company with its principal place of business in Rolling Meadows, Illinois. Harco is authorized to and does business in Oklahoma, including issuing the payment bond at issue in this case for the below-described Project in

Oklahoma. On information and belief, Harco is wholly owned by IAT Insurance Group, Inc., a North Carolina corporation.

6. Defendant Travelers is a Connecticut corporation with its principal place of business in Hartford, Connecticut. Travelers is authorized to and does business in Oklahoma, including issuing the payment bond at issue in this case for the below-described Project in Oklahoma.

7. Defendant Unlimited is an Arkansas limited liability company with its principal place of business in Benton County, Arkansas. On information and belief, the members of Unlimited are Keith Coleman, an individual and a citizen of Arkansas, and Anthony Auxier, an individual and a citizen of Arkansas.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337, and the provisions of the Miller Act, 40 U.S.C. § 3131, *et seq.*

9. The Court also has jurisdiction over this action under 28 U.S.C. § 1332(a) because Plaintiff EA and the Defendants are citizens of different states, and the amount in controversy exceeds $75,000, excluding interest and costs.

10. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over EA's claims of breach of contract, open account, quantum meruit, and unjust enrichment because EA's claims are so related to the claims within the Court's jurisdiction that they form part of the same case or controversy under Article 3 of the U.S. Constitution.

11. The Court has personal jurisdiction over the parties and venue is proper in this judicial district pursuant to 40 U.S.C. § 3133(b)(3)(B) and 28 U.S.C. §§ 116 & 1391(b) as the performance and execution of the contracts described below occurred in this district,

and the construction Project at issue was located within this district at Tinker Air Force Base, in Oklahoma County, Oklahoma.

**FACTS**

12.     On or about September 23, 2022, the United States Army Corps of Engineers awarded contract number W912BV-22-C-0025 (the "**Contract**") to CF2 for the renovation of the Air Force Life Cycle Management Center (AFLCMC-WAG) Building 9201 at Tinker Air Force Base, Oklahoma County, Oklahoma (the "**Project**").

13.     As a purported joint venture, CF2 is not a separate and distinct legal entity from CNES and Conti. Any division, assignment, or contract of or for the work under the Contract between and among CF2, CNES, and Conti is merely an allocation of the work under the Contract among the joint venture and is not a contract to a distinct legal entity outside the joint venture.

14.     On October 7, 2022, CF2, CNES and Conti, as co-principals, executed and delivered a bond to the United States of America, as required by the Miller Act, in the amount of $24,802,205.00 for the benefit of any unpaid laborers or materialmen on the Project (the "**Payment Bond**"). The Payment Bond includes two (2) sureties for the obligation: Harco and Travelers. Harco's identification number for the Payment Bond is TXHNSU0811222 and Travelers' identification number for the Payment Bond is 107693056. A true and correct copy of the Payment Bond is attached as **Exhibit 1**.

15.     CF2 subcontracted with Unlimited for Unlimited to provide labor, materials, and equipment for the Project that were required under the Contract. This made Unlimited a first-tier subcontractor under the Miller Act.

16.    EA and Unlimited are parties to a standing Customer Agreement that provides the terms on which EA will provide skilled electrical workers to complete work for Unlimited at Unlimited's request and direction in exchange for Unlimited paying EA based on actual hourly rates for EA's electrical workers and the time expended, plus an additional 1.5% of the hourly rates.

17.    Pursuant to the Customer Agreement, Unlimited requested EA to provide skilled electrical workers to complete portions of the Project that were required under the Contract and under Unlimited's subcontract. This made EA a second-tier subcontractor under the Miller Act.

18.    Beginning on or around August 2024, EA's electrical workers commenced work on the Project under the direction of Unlimited and CF2.

19.    EA performed its work in a timely, good and workmanlike manner.

20.    All of EA's work on the Project was part of the scope of CF2's Contract with the Project owner and part of the scope of Unlimited's subcontract with CF2.

21.    All of EA's work on the Project was approved and accepted by Unlimited, CF2, and the Project owner.

22.    Neither Unlimited nor CF2 made complaints regarding the performance of EA's work or its workers.

23.    EA fully paid its electrical workers for all work performed on the Project.

24.    EA last furnished labor to the Project on January 31, 2025.

25.    EA regularly submitted invoices to Unlimited.

26.    To date, Unlimited has only paid EA $38,897.62.

27.     Unlimited failed to pay more than thirty (30) invoices for the work that EA's electrical workers performed on the Project. EA provided all outstanding invoices to Unlimited, totaling $321,942.61.

28.     EA has provided all outstanding invoices to Unlimited, totaling $321,942.61 for work performed by EA employees up to January 31, 2025.

29.     As of the date of this Amended Complaint, Unlimited has failed and refused to pay EA the amounts owed on the unpaid invoices.

30.     Pursuant to the Customer Agreement, Unlimited agreed to pay EA a late charge equal to the maximum legal rate for contracts, or five percent (5%) weekly accruing, whichever is less, on the unpaid delinquent balance of each invoice owed until paid in full ("**Late Charges**"). Unlimited has refused to pay all Late Charges due and owing under the Customer Agreement.

31.     In the alternative to the Late Charges, EA may elect to seek recovery of interest on the $321,942.61 unpaid balance of the invoices at 6% until paid in full pursuant to OKLA. STAT. tit. 15 § 266.

32.     The Customer Agreement also contains a "Non-Solicitation" provision whereby Unlimited agreed to not recruit and/or employ any employees obtained through EA or any worker sent to Unlimited by EA during the term of one-year following the termination of the Customer Agreement.

33.     Unlimited has solicited at least six (6) EA employees from December 23, 2024, to February 3, 2025.

34.    EA seeks recovery of its attorneys' fees pursuant to OKLA. STAT. tit. 12, § 936, as well as all recoverable costs.

## COUNT I
### Miller Act Claim
### (*against Defendants CF2, CNES, Conti, Harco, and Travelers*)

35.    EA adopts and incorporates by reference the preceding paragraphs.

36.    For contracts for construction of public buildings or public works of the Federal government, the Miller Act requires a payment bond "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract for the use of each person." 40 U.S.C § 3131(b)(2).

37.    The Payment Bond provides protection to all persons supplying labor and materials in carrying out the work provided for in the Contract for the Project.

38.    EA supplied labor in carrying out the work provided for in the Contract for the Project, pursuant to the Customer Agreement.

39.    EA last furnished labor to the Project on January 31, 2025, and has not been paid in full within 90 days after that date by either CF2, CNES, Conti, Unlimited, Harco, Travelers, or anyone else.

40.    EA is within the class of persons entitled to protection under the Miller Act.

41.    By letter dated April 7, 2025, EA provided a Miller Act Notice of Claim to CF2, CNES, Conti, Unlimited, Harco, and Travelers within 90 days from the date on which EA last provided labor for the Project as required by 40 U.S.C. § 3133(b). A true and correct copy of the Miller Act Notice is attached as **Exhibit 2.**

42.    EA has complied with all jurisdictional requirements of the Miller Act.

43.     EA filed the original Complaint within the one-year restriction on suit under the Miller Act. *See Complaint*, Doc. 1, filed Jan. 28, 2026.

44.     As principal on the Payment Bond and prime contractor on the Contract, CF2 should be required to appear herein and establish its position with respect to EA's claim.

45.     As principals on the Payment Bond, CNES and Conti should be required to appear herein and establish their position with respect to EA's claim.

46.     Harco and Travelers are the sureties on the Payment Bond and should be required to appear herein and establish their position with respect to EA's claim.

47.     CF2, CNES, Conti, Harco, and Travelers are jointly and severally liable to EA under the Payment Bond.

48.     EA has suffered damages in excess of $321,942.61 as a result of CF2, CNES, Conti, Harco, and Travelers failing to pay EA for the labor and work it provided to the Project.

49.     EA is entitled to payment against the Payment Bond for the principal amount of $321,942.61, plus prejudgment interest at 6%, plus post-judgment interest until paid in full, plus costs and reasonable attorney fees accrued and accruing.

50.     The Project and the Payment Bond are the same project and payment bond at issue in actions filed in this Court in CIV-25-0714-HE, CIV-25-0885-HE, and CIV-26-00236-HE.

51.     EA stands at the same second-tier level in this case as the Plaintiff in in Case No. CIV-25-0885-HE, a separate Miller Act case on the same project wherein the Court

denied a Motion to Dismiss that claimed a contract among the CF2 joint venture entities created an additional tier. *See* Order attached as **Exhibit 3**.

**COUNT II**
**Breach of Contract**
(*against Defendant Unlimited*)

52. EA adopts and incorporates by reference the preceding paragraphs.

53. EA has fully performed its obligations to Unlimited under the Customer Agreement and otherwise.

54. Unlimited has materially breached the Customer Agreement by failing to pay EA amounts owed for work completed by EA on the Project.

55. Unlimited has further breached the Customer Agreement by soliciting at least six (6) EA employees and offering and extending direct employment during the period from December 23, 2024, to February 3, 2024, in direct violation of the Customer Agreement.

56. As a direct result of Unlimited's breach of the Customer Agreement, EA has suffered actual, consequential and incidental damages in an amount to be determined at trial, but at least $321,942.61, plus Late Charges as allowed under the Customer Agreement or, alternatively, interest on the unpaid balance owed at 6% until paid in full pursuant to OKLA. STAT. tit. 15 § 266.

57. EA is further entitled to an award of its costs and attorneys' fees incurred in prosecuting this claim pursuant to OKLA. STAT. tit. 12 § 936 and the terms of the Customer Agreement.

**COUNT III**
**Open Account**
(*against Defendant Unlimited*)

58.     EA adopts and incorporates by reference the preceding paragraphs.

59.     Unlimited has an open account with EA that has a remaining balance of $321,942.61 plus Late Charges.

60.     Upon entering into the Customer Agreement, Unlimited agreed to pay EA for the electrical labor supplied at the Project.

61.     Despite EA's demands, Unlimited has failed to tender payment in full on its account with EA under the terms of the Customer Agreement.

62.     Therefore, EA is entitled to recover a total of $321,942.61 from Unlimited, plus Late Charges or, alternatively, interest on the unpaid balance owed at 6% until paid in full pursuant to OKLA. STAT. tit. 15 § 266.

63.     Pursuant to OKLA. STAT. tit. 12, § 936 and the terms of the Customer Agreement, EA is further entitled to an award of its attorneys' fees and costs in prosecuting this claim.

**COUNT IV**
**Quantum Meruit and Unjust Enrichment**
(*against ALL Defendants*)

64.     EA adopts and incorporates by reference the preceding paragraphs.

65.     EA provided valuable skilled electrical workers that completed work on the Project in a timely and good and workmanlike manner.

66.    EA, at all times relevant, conducted itself in good faith in connection with the provision of skilled electrical workers and skilled electrical work to, for, on behalf of, and at the request of Unlimited to complete portions of its Contract for the Project.

67.    The skilled electrical workers and skilled electrical work completed by EA benefited CF2, CNES, Conti, and Unlimited.

68.    CF2, CNES, Conti, and Unlimited knew the skilled electrical workers and skilled electrical work completed by EA were being used at and incorporated into the Project for their benefit.

69.    CF2, CNES, Conti, and Unlimited were reasonably notified that EA expected to be paid for the labor and work provided by EA.

70.    CF2, CNES, Conti, and Unlimited accepted the benefits of the skilled electrical workers provided and skilled electrical work completed by EA on the Project.

71.    EA has made a demand upon CF2, CNES, Conti, and Unlimited for the reasonable value of the skilled electrical workers provided and skilled electrical work completed by EA on the Project.

72.    EA has not been paid by CF2, CNES, Conti, Unlimited, Harco, Travelers, or anyone else for reasonable value of the skilled electrical workers provided and skilled electrical work completed by EA on the Project.

73.    The reasonable value of the skilled electrical workers provided and skilled electrical work completed by EA on the Project for which EA has not been paid is not less than $321,942.61.

74.    CF2, CNES, Conti, and Unlimited would be unjustly enriched and unfairly benefited if they were not made to pay EA for the skilled electrical workers provided and skilled electrical work completed by EA on the Project.

75.    As a result, EA has been actually damaged in an amount to be proven at trial but believed to be equal to at least $321,942.61 plus Late Charges or, alternatively, interest on the unpaid balance owed at 6% until paid in full pursuant to OKLA. STAT. tit. 15 § 266.

76.    EA is entitled to judgment in its favor and against CF2, CNES, Conti, and Unlimited in an amount that will compensate EA for the reasonable value of the skilled electrical workers provided and skilled electrical work completed by EA on the Project in an amount not less than $321,942.61, plus prejudgment and post-judgment interest, plus costs and reasonable attorney fees accrued and accruing, plus such other relief, whether at law or in equity, to which the Court deems EA is entitled.

**WHEREFORE**, EA requests the Court award judgment in its favor and against Defendants as follows:

a.    Judgment for EA under the Miller Act against the Payment Bond in the principal amount of $321,942.61 plus prejudgment and plus post-judgment interest until paid in full, plus costs and reasonable attorney fees accrued and accruing;

b.    Judgment for EA against Unlimited for EA's actual, consequential and incidental damages in an amount to be determined at trial, but at least $321,942.61, plus Late Charges as allowed under the Customer Agreement or, alternatively, interest on the unpaid balance owed at 6% until paid in full pursuant to OKLA. STAT. tit. 15 § 266.

c.      Judgment against CF2, CNES, Conti, and Unlimited in an amount that will compensate EA for the reasonable value of the skilled electrical workers provided and skilled electrical work completed by EA on the Project in an amount not less than $321,942.61, plus prejudgment and post-judgment interest, costs and attorney fees accrued and accruing; and

d.      Judgment for any other relief, whether at law or in equity, to which the court deems EA is entitled.

DOERNER, SAUNDERS, DANIEL
  & ANDERSON, L.L.P.

*s/N. Lance Bryan*
N. Lance Bryan, OBA No. 19764
Two West Second Street, Suite 700
Tulsa, Oklahoma 74103-3117
Tel. 918.582.1211 | Fax 918.529.5256
lbryan@dsda.com

-and-

Allison S. Tien, OBA No. 36279
210 Park Ave, Suite 1200
Oklahoma City, OK 73106-5636
Tel. 405.319.3500 | Fax 405.319.3509
atien@dsda.com

*Attorneys for Electrical Alliances, LLC*

**JURY TRIAL DEMANDED**